UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-12082-GAO

UNITED STATES OF AMERICA,
Plaintiff,

v.

PAUL N. CROSSEN, VICKI CROSSEN, NATIONS RENT, NICKERSON LUMBER CO.,
ANTHONY R. PRIZZI, JR, and METAL BUILDINGS PRODUCTS, INC.
d/b/a SPIRCO MANUFACTURING,
Defendants.

OPINION AND ORDER
August 12, 2010

O'TOOLE, D.J.

This tax collection action seeks to reduce to judgment federal income tax, penalty, and interest assessments against the defendant, Paul N. Crossen, and to validate and foreclose the federal tax liens attaching to his property and rights to property, including his interest in 317 Main Street, Harwich, Massachusetts (the "Property"). Before the Court are cross-motions for summary judgment.

**I.   Statement of Undisputed Facts**

   A.   Crossen's Tax Liabilities

This tax collection action arises from Crossen's failure to file federal income tax returns for tax years 1987 to 1993 and his failure to make complete payment on his 1994, 1996, 2000, and 2002 federal income tax liabilities.

The Internal Revenue Service ("IRS") issued Certificates of Assessment detailing Crossen's tax liabilities for each tax year, including statutory interest and penalties. The IRS also assessed a civil penalty against Crossen under 26 U.S.C. § 6721 for incorrect information

submitted on his 2001 federal income tax return. Crossen's tax liabilities were assessed as follows:

| Tax Year | Assessment Date | Unpaid Balance of Assessment | Unpaid Balance Plus Accruals to March 2, 2010 |
| --- | --- | --- | --- |
| 1987 | May 20, 1996 | $12,717.57 | $34,509.77 |
| 1988 | March 4, 1996 | $20.00 | $839.44 |
| 1989 | March 4, 1996 | $0.00 | $4,128.55 |
| 1990 | March 4, 1996 | $4,249.48 | $11,685.45 |
| 1991 | March 4, 1996 | $3,816.44 | $10,542.00 |
| 1992 | March 4, 1996 | $0.00 | $1,114.77 |
| 1993 | March 4, 1996 | $8,419.07 | $23,474.58 |
| 1994 | August 25, 1997 | $4,651.89 | $10,975.69 |
| 1996(1) | August 25, 1997 | $231.00 | $375.76 |
| 1996(2) | March 15, 1999 | $3,525.72 | $7,818.64 |
| 2000 | June 3, 2002 | $10,479.80 | $16,597.41 |
| 2002 | November 14, 2005 | $7,851.90 | $10,801.75 |
| Civil Penalty | March 8, 2004 | $790.00 | $1,132.86 |
| TOTAL | | | $133,996.67 |

On April 29, 1998, Crossen submitted an offer-in-compromise seeking to compromise his 1987-1994 and 1996(1) tax liabilities. Crossen submitted amended offers-in-compromise on November 17, 1999 and February 9, 2000. His final offer for a lump sum payment of $26,766 payable within ninety days of acceptance was accepted by the IRS on April 6, 2000.

On July 22, 2003, the IRS declared a default after Crossen failed to pay the compromised amount in full. Crossen's default prompted the IRS to send him a notice of its intent to levy on his tax liabilities for tax years 1987-1994 and 1996(1) and his right to a collection due process hearing. Crossen requested a hearing on January 16, 2004. A Notice of Determination letter was issued on October 26, 2004. The IRS filed this complaint on December 16, 2008.

    B.    <u>Federal Tax Liens</u>

Crossen resides at the Property with his wife, Vicki Crossen. The Crossens own the Property as tenants by the entirety. In accordance with 26 U.S.C. §§ 6321 and 6322, after Crossen failed to resolve his tax liabilities, the IRS issued federal tax liens attaching to his

property and rights to property, including his interest in the Property. Notices of Federal Tax Liens ("NOFTLs") were recorded at the Barnstable County Registry of Deeds on February 11, 2004, January 24, 2006, September 26, 2006, October 13, 2006, and June 10, 2008.

Other parties claim an interest in the Property. Nations Rent, Inc. ("Nations Rent") and Anthony R. Prizzi, Jr. recorded executions of judgment against Crossen and the Property at the Barnstable County Registry of Deeds on February 2, 2005 and March 4, 2008, respectively. Metal Building Products, Inc. d/b/a Spirco Manufacturing ("Metal Building Products") filed a writ of attachment against Crossen and the Property on July 6, 2004.

## II.   Crossen's Motion for Summary Judgment

Crossen has moved for partial summary judgment, arguing that the government's complaint for tax years 1987-1994 and 1996(1) is time-barred.

Absent an event suspending the limitations period, the government must collect an unpaid tax within ten years of assessment. 26 U.S.C. § 6502(a)(1). A request for a collections due process hearing, id. § 6330(e)(1), and the submission of an offer-in-compromise, id. § 6331(k), suspend the limitations period, thereby extending the collection statute expiration date.[1] Here, it is undisputed that Crossen's request for a collections due process hearing suspended the limitations period for 375 days.[2] See id. § 6330(e)(1) (suspending the limitations period from the date of request, January 16, 2004, to the date the Notice of Determination letter issues, October 26, 2004, plus ninety days). The parties, however, dispute the amount of time that the limitations period was suspended by Crossen's offers-in-compromise.

---

[1] The limitations period can also be suspended by written agreement. 26 U.S.C. § 6502(a)(2). The Court does not address this issue because, at oral argument, the government withdrew its only argument based on the waivers in Crossen's offers-in-compromise (i.e., that the waivers suspended the limitations period until the IRS declared a default on July 22, 2003).

[2] The parties calculated 374 days, but likely failed to appreciate that 2004 was a leap year.

Suspension of the limitations period by an offer-in-compromise is governed by 26 U.S.C. § 6331(k). Subsection (k)(3), in conjunction with subsection (i)(5), suspends the limitations period while levy is "prohibited." Subsection (k)(1), in turn, prohibits levy on a taxpayer's property while an offer-in-compromise is pending. An offer is pending from the date it is accepted for processing until the date it is accepted or rejected. Id. § 6331(k)(1).

So far the statutory framework appears straightforward. The parties, however, dispute § 6331(k)'s effective date. This provision was enacted by the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. No. 105-206, § 3462(b), 112 Stat. 685, 764 (1998). The RRA provided that this provision applied "to offers-in-compromise pending on or made after December 31, 1999." Id. § 3462(e). The government asserts that because Crossen's offer-in-compromise was pending on December 31, 1999, the limitations period was suspended from April 29, 1998 (the date his offer was accepted for processing) until April 6, 2000 (the date his offer was accepted), as § 6331(k) provides. Crossen argues that even though his offer-in-compromise was pending on December 31, 1999, § 6331(k) itself did not become effective until January 1, 2000. Therefore, he says, the limitations period was only suspended from January 1, 2000 (the date when suspension was authorized by the statute) until April 6, 2000 (the date his offer was accepted). The question dividing the parties is whether, when § 6331(k) became effective on January 1, 2000, it had the effect of retroactively suspending the limitations period beginning on April 29, 1998 (the date Crossen's offer-in-compromise was accepted for processing).

Interpretation of a statute begins with the text. Plumley v. S. Container, Inc., 303 F.3d 364, 369 (1st Cir. 2002). Courts give effect to a statute's "plain meaning" unless doing so "would produce an absurd result or one manifestly at odds with the statute's intended effect."

Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 74 (1st Cir. 2002) (internal quotation omitted). Section 6331(k) requires levy to be *prohibited* in order to suspend the limitations period. Put simply, levy was not prohibited during the pendency of an offer-in-compromise before § 6331(k) became effective on January 1, 2000. Although, as contended by the government at oral argument, the IRS could choose not to levy during the pendency of an offer-in-compromise before January 1, 2000, a choice to abstain from action is not the same as a prohibition from action. See United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242 (1989) (explaining that literal application of a statute will rarely "produce a result demonstrably at odds with the intentions of its drafters"). To suspend the limitations period from April 29, 1998, would use a provision that suspends the limitations period while levy is prohibited to suspend the limitations period retroactively for a period of time during which levy was not prohibited. Such an interpretation would be manifestly at odds with § 6331(k)'s plain meaning.

Interpretation of § 6331(k) could end here. See Succar v. Ashcroft, 394 F.3d 8, 22-23 (1st Cir. 2005) ("[D]eference to an agency's statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."). Nevertheless, the above interpretation is reinforced by the IRS's view that § 6331(k) suspends the limitations period beginning on January 1, 2000. The IRS Manual specifies how to determine the collection statute expiration date for offers-in-compromise, such as Crossen's, that were pending on January 1, 2000 and accepted between December 31, 1999 and December 21, 2000. For these offers, the IRS Manual states: "If the offer was still pending on [January 1, 2000], the [collection statute expiration date] would also be extended from that date until the date of acceptance." IRS Manual § 5.1.19.3.4, available at http://www.irs.gov/irm/part5/irm_05-001-019.html (last visited Aug. 12, 2010); see also Office of Chief Counsel,

5

482 Collection, Bankr. & Summonses Bull. 13-18 (2000), available at http://www.irs.gov/pub/irs-wd/0103071.pdf (last visited Aug. 12, 2010) (offering the same statutory interpretation).[3] This informal interpretation of the Internal Revenue Code merits some deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944). See Doe v. Leavitt, 552 F.3d 75, 80-81 (1st Cir. 2009) (explaining that informal agency interpretations of statutes are entitled to deference under Skidmore "to the extent that those interpretations have the 'power to persuade'") (internal quotation omitted).

The Court therefore agrees with Crossen. Section 6331(k) suspended the limitations period for 97 days,[4] from January 1, 2000 to April 6, 2000.

Cumulatively, Crossen's request for a collections due process hearing and his submission of his offer-in-compromise suspended the limitations period for 472 days. The collections statute expiration dates are as follows:

| Tax Year | Assessment Date | Original Collections Statute Expiration Date | + 472 days |
| --- | --- | --- | --- |
| 1987 | May 20, 1996 | May 20, 2006 | September 4, 2007 |
| 1988-1993 | March 4, 1996 | March 4, 2006 | June 19, 2007 |
| 1994, 1996(1) | August 25, 1997 | August 25, 2007 | December 9, 2008 |

Because the government did not file its complaint for tax years 1987-1994 and 1996(1) until December 16, 2008, the complaint as to these years is time-barred. The defendant's partial Motion for Summary Judgment (dkt. no. 24) is GRANTED.

---

[3] Even the Tax Division of the U.S. Department of Justice has espoused this interpretation of § 6331(k) in other collection actions. See, e.g., Mem. in Supp. of United States' Mot. for Summ. J. at 9, Staso v. United States, No. 09-2236 (D. Kan. Mar. 2, 2007) (dkt. no. 16); Opp'n & Cross-Mot. for Summ. J. by United States at 10 n.10, United States v. Rosenberg, No. 04-22991 (S.D. Fla. Mar. 5, 2005) (dkt. no. 19).

[4] Crossen calculated 96 days, but he likely failed to appreciate that 2000 was a leap year.

**III.     Government's Motion for Summary Judgment**

In its motion for summary judgment, the government has moved to (1) reduce to judgment the tax assessments for tax years 1987-1994, 1996(1), 1996(2), 2000, and 2002 and for the 2001 civil penalty; (2) for a declaration that it has valid federal tax liens on Crossen's property and rights to property, including his interest in the Property; (3) adjudge that the federal tax liens attaching to the Property be foreclosed; and (4) determine the order of priority for the distribution of foreclosure sale proceeds.

Unless the taxpayer proves otherwise, see Delaney v. Comm'r of Internal Revenue, 99 F.3d 20, 23 (1st Cir. 1996), tax assessments are presumed correct and will be reduced to judgment, see Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992). Federal tax liens arise in connection with valid assessments. Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1234 (1st Cir. 1996). Crossen has proven that the assessments for tax years 1987-1994 and 1996(1) are time-barred and cannot be reduced to judgment. Crossen, however, makes no attempt to overcome the presumption that accompanies the assessments for tax years 1996(2), 2000, and 2002 and for the 2001 civil penalty. The Court will enter judgment for the government in the amount of $36,350.66, plus statutory additions and interest accruing from March 2, 2010 and declare the corresponding federal tax liens valid.

Even if certain assessments and liens are valid, Crossen argues that the government cannot foreclose on the Property because it has not complied with 26 U.S.C. § 6334(e)(1)(A), which exempts the taxpayer's principal residence from levy until the government demonstrates to the court that his other assets are insufficient to pay the amount due.

Section 6334(e)(1)(A)'s principal residence exemption applies only to administrative levies, not judicial foreclosure actions. Although Crossen argues that Congress must have

intended this exemption to apply to judicial foreclosure actions, its decision to enact this exemption only for administrative levies suggests otherwise. Congress knew how to create a principal residence exemption; if it had intended to create an exemption for judicial foreclosure actions, it would have done so. Moreover, the policy underlying the principal residence exemption does not justify its application in judicial foreclosure actions. Taxpayers are entitled to this determination by the court because when the IRS levies on a principal residence, no court has found that the taxes are even due, see United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721 (1985); United States v. Rodgers, 461 U.S. 677, 682-83 (1983); whereas, when the court orders foreclosure on a principal residence, the taxpayer has already had the opportunity to contest and the court has already determined that the taxes are due. The extra protection afforded by § 6334(e)(1)(A) is therefore unnecessary in judicial foreclosure actions. Accordingly, the Court orders foreclosure of the Property.

The Court must also determine the order of priority for distribution of the foreclosure sale proceeds. A federal tax lien attaches only to the debtor spouse's interest in property owned as tenants by the entirety, see United States v. Craft, 535 U.S. 274, 276 (2002); thus, the government can foreclose on the Property, but must reimburse fifty percent of the foreclosure sale proceeds to Vicki Crossen, the non-debtor spouse, as compensation for her fifty percent interest in the Property,[5] see Rodgers, 461 U.S. at 680 (entitling a non-debtor spouse to "complete compensation" for her interest). Vicki Crossen has priority over all other parties.

Priority among the other parties is governed by the "first in time is the first in right" rule. United States v. McDermott, 507 U.S. 447, 449 (1993). Under this rule, the first party to perfect its lien has priority over all subsequently perfected liens. See id. at 449-50. The IRS perfects a federal tax lien by filing a NOFTL in the appropriate registry of deeds. 26 U.S.C. § 6323(a). A

---

[5] The parties agree that Vicki Crossen has a fifty-percent interest in the Property.

state-law judgment lien creditor perfects a lien by obtaining a judgment and recording the writ of attachment issued on the judgment in the appropriate registry of deeds. L. Rudolph Elec. Co. v. Gibbs Oil Co., 454 N.E.2d 1288, 1288 (Mass. App. Ct. 1983). An unperfected lien takes a backseat to a perfected lien. United States v. Sec. Trust & Sav. Bank, 340 U.S. 47, 50 (1950).

Applying these principles here, after the costs of the foreclosure sale have been satisfied, the proceeds shall be distributed as follows: half to Vicki Crossen; and then to the United States in accord with its NOFTL for tax years 1996(2) and 2000 filed on February 11, 2004; to Nations Rent in accord with its execution of judgment recorded on February 2, 2005; to United States in accord with its NOFTL for tax year 2002 and the 2001 civil penalty filed on January 24, 2006; to Anthony Prizzi, Jr. in accord with his execution of judgment on March 4, 2008; to Metal Building Products in accord with its writ of attachment filed on July 6, 2004; with any remainder distributed to Paul Crossen. This order of priority is undisputed by the parties.

For the foregoing reasons, the government's Motion for Summary Judgment (dkt. no. 26) is GRANTED in PART and DENIED in PART. The government is directed to submit a proposed form of judgment within fourteen (14) days of this Opinion and Order.

It is SO ORDERED.

              /s/ George A. O'Toole, Jr.
             United States District Judge